IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **SUSAN WYATT,** )<br>)<br>Plaintiff, )<br>)<br>**vs.** )<br>)<br>**MATRIXX INITIATIVES, INC.,** a )<br>corporation; and **ZICAM LLC,** a )<br>wholly owned subsidiary of Matrixx )<br>Initiatives, Inc., )<br>)<br>Defendants. ) | Civil Action Number<br>2:04-cv-1230-UWC |

**MEMORANDUM OPINION
ON DEFENDANTS' MOTION TO EXCLUDE THE
EXPERT TESTIMONY OF BRUCE W. JAFEK, M.D.**

Plaintiff Susan Wyatt ("Wyatt") brings this action against Defendants Matrixx Initiatives, Incorporated ("Matrixx") and Zicam, LLC. [1] Wyatt claims that Zicam, a product manufactured by Defendants, caused her to lose her sense of smell and taste.

Presently before the Court are three "*Daubert*" Motions, (Docs 154, 157, 160), filed by Defendants who seek to exclude the proffered testimony of three witnesses for Plaintiff: Roger Lander, Pharm. D.; Guy Handley, M.D.; and Bruce W. Jafek, M.D. The testimony of Roger Lander, Pharm. D. Will not be offered with respect to specific or general causation. Dr. Handley is Wyatt's treating ear, nose and throat physician, who opines that Zicam use was most likely the cause of Wyatt's smell loss. Most of Dr.

---

[1] The Court will refer to Defendants collectively as Matrixx.

Handley's testimony is based on the temporal relationship between Wyatt's use of Zicam and her loss of smell. Dr. Jafek's testimony is being offered on the issue of general and specific causation. Without Dr. Jafek's testimony, Wyatt cannot proceed on her claim.

For the reasons set forth below, the Court finds that Dr. Jafek's testimony must be excluded because his methodology is unreliable.

## I. FACTUAL BACKGROUND

Defendant Matrixx is the manufacturer of Zicam No Drip Nasal Gel ("Zicam"), a homeopathic cold remedy that Matrixx claims shortens the duration of the common cold. The active ingredient in Zicam, zinc gluconate, is delivered up the nose through the use of a nasal pump.

Wyatt purchased Zicam after feeling the onset of cold like symptoms, which consisted of drainage in the back of her throat and a strange feeling in her eyes. The Zicam package instructions state that the patient should prime the applicator pump several times, place the tip of the nozzle 1/8 inch inside the nose, slightly angle the nozzle outward, pump once into each nostril, but do not sniff up the gel. Wyatt testified that she followed these instructions.

Wyatt used Zicam several times around mid-March 2004, and then once again on March 14, 2004, at which time she experienced "severe burning" in her nose. Later that same day she realized that she could not taste her dinner. Sometime later, Wyatt was diagnosed with loss of smell and taste - - conditions that are likely permanent.

In order to succeed on her claim at trial, Wyatt must prove both general and specific causation. That is, she must establish that Zicam can cause smell loss and that Zicam indeed caused her to lose her senses of smell and taste. In support of her claim, Wyatt offers the testimony and report of Dr. Jafek, a medical doctor, professor, and researcher. There is no dispute that Dr. Jafek has the credentials to testify as an expert.

The dispute here is wether his opinions are sufficiently reliable. In his expert report, Dr. Jafek opines, *inter alia*, that:

1. the zinc ions in Zicam reach the olfactory tissue in humans;

2. the zinc ions in Zicam cause loss of smell;

3. the loss of smell caused by the zinc ions in Zicam is permanent in some cases; and

4. the use of Zicam caused Ms. Wyatt's loss of smell and taste and this is permanent.

## II.  LEGAL STANDARD

As the proponent of Dr. Jafek's testimony, Wyatt bears the burden of establishing its admissibility. *United States v. Williams*, 95 F.3d 723, 729 (8th Cir. 1996). Rule 702 of the Federal Rules of Evidence outlines the standards to be applied with respect to admissibility of expert testimony. When "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact at issue," such testimony is admissible if:

    1.      "the testimony is based on sufficient facts or data,"

    2.      "the testimony is the product of reliable principles and methods," and

    3.      "the witness has applied the principles and methods reliably to the facts of the case."

Fed. R. Evid. 702.

When determining the reliability of expert testimony, *Daubert* and its progeny provide the following non-exclusive list of factors for a Court to consider:

    1)      whether the theory or technique "can be (and has been) tested,"

    2)      "whether the theory or technique has been subjected to peer review and publication,"

    3)      "the known or potential rate of error," and

    4)      "general acceptance" in the relevant scientific community.

*Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 509, 593-95 (1993).

### III. ANALYSIS

When the parties initially briefed and presented oral arguments on the *Daubert* issues in the present case, there were no District Court decisions on the admissibility of Dr. Jafek's Zicam testimony. Since that time, <u>every</u> District Court that has reached a decision on this issue has excluded Dr. Jafek's proffered expert opinions on Zicam: *Hans v. Matrixx Initiatives*, 3:04-cv-540-R (W. D. Ky. Sept. 29, 2006); *Sutherland v. Matrixx*

*Initiatives,* CV 04-AR-0129-M (N.D. Ala. Nov. 7, 2006); *Benkwith v. Matrixx Initiatives,* 2:04-cv-623-MEF (M.D. Ala. Dec. 27, 2006); *O'Hanlon v. Matrixx Initiatives*, CV 04-10391 AHM (JTLx) (C.D. Cal. Jan. 3, 2007); and *Hilton v. Matrixx Initiatives,* 4:04-cv-519-Y (N.D. Tex. Feb. 20, 2007).  In light of these <u>five</u> decisions, the present Court invited the parties in the present action to supplement their briefs on Dr. Jafek, and the Court heard a second round of oral argument on the *Daubert* issues.

While this Court was originally reluctant to grant Defendants' motion to exclude Dr. Jafek, the overwhelming rejection of Dr. Jafek's proffered testimony has been quite compelling, particularly the analysis found in the decisions from the Northern and Middle Districts of Alabama: *Benkwith v. Matrixx Initiatives, Inc.*, No. 2:04-cv-623-MEF (M.D. Ala. Dec. 27, 2006) and *Sutherland v. Matrixx Initiatives, Inc.*, 04-AR-129-M (N.D. Ala. Nov. 7, 2006).  To those decisions, the Court adds the following observations.

      1.    <u>Do the Zinc Ions in Zicam Reach the Human Olfactory Epithelium When Used as Directed</u>?

"'General causation is concerned with whether an agent increases the incidence of disease in a group and not whether the agent caused any given individual's disease.'" *McClain v. Metabolife In'l, Inc.*, 401 F.3d 1233, 1239 (11th Cir. 2005) (citation omitted). Here, Dr. Jafek opines that Zicam can reach the human olfactory epithelium (i.e., smell tissue) when used as directed.  This tissue covers a very small area located inside the nose behind three bony fleshy structures called turbinates, which help filter particles inhaled

through the nose.

Dr. Jafek primarily bases his opinion that Zicam can reach the smell tissue on the following observations and experiments:

a. his personal observation that Zicam squirts a distance of up to 4 to 10 feet;

b. his personal observation that, when pumped, Zicam gel travels in a straight stream; and

c. 1930's polio research, as well as his recent research, that there is a straight pathway from the opening of the nose to the smell tissue.

Matrixx first argues that Dr. Jafek's deposition testimony contradicts his expert report. Specifically, when asked during his deposition about the ability of Zicam to reach the smell tissue, Dr. Jafek testified as follows:

> Q. I want you to assume that a patient interpreted outward in the directions to mean to the side of the nose and not upward or straight up. If the patient so interpreted the direction, where would the Zicam go, in your opinion?
>
> A. I suppose if the patient so interpreted the directions different from those on the box, that the Zicam would go to the side of the nose.
>
> Q. And under those circumstances, would you expect that it would reach the olfactory epithelium?
>
> A. Under those circumstances, it probably would not reach the olfactory cleft area.

(Defs.' Ex. 55, Jafek (Lusch) Dep. at pp. 237-238.)

The Court finds that this deposition testimony does not contradict Dr. Jafek's expert report. In his deposition, Dr. Jafek concedes that Zicam probably would not reach

the smell tissue, if the consumer interpreted the directions to mean that the nozzle should be pointed "to the side of the nose." However, the package instructions do not indicate the nozzle should be pointed to the side. Rather the instructions indicate that the nozzle should be "angled outward." The drawing that accompanies those instructions shows the user pointing the nozzle slightly away from a vertical position, at approximately a ten or eleven o'clock position. Thus, a user who followed the directions would not necessarily point the nozzle "toward the lateral nasal wall," as argued by Matrixx. Accordingly, Dr. Jafek's deposition testimony regarding positioning the nozzle to the side of the nose does not conflict with his expert opinion that Zicam, when used as instructed, reaches the smell tissue.

Notwithstanding this flawed argument by Matrixx, the Court does agree that Dr. Jafek's opinions do not meet the *Daubert* standard. First, Dr. Jafek indicates that he observed the Zicam nozzle spray up to ten feet straight in the air. This observation, combined with information extrapolated from polio research and several research projects of his own, establish that applications of zinc gluconate into the nose can go directly to the smell tissue, concludes Dr. Jafek.

One fundamental problem with Dr. Jafek's conclusion is that the smell tissue covers a very small area and there are structures (turbinates) between the opening of the nose and this very small area of tissue. Indeed, in a 1983 article, Dr. Jafek opined that the smell tissue was "almost anatomically inaccessible in living humans," when taking a

biopsy.  (Pl.'s Ex. 39 at p. 1576.)

While that same article explained he was able to use a straight biopsy instrument to reach the smell tissue, such research does not reliably indicate that Zicam gel can reach the smell tissue when used as directed.  A small biopsy instrument that is guided manually is not equivalent to application of Zicam gel using a spray nozzle.

Next, Dr. Jafek relies on polio studies conducted in the 1930's by Max M. Peet, M.D.  Dr. Jafek noted in his expert report that Peet used an atomizer with a long narrow tip and was able to pass through the narrow cleft between the middle turbinate and the septum [2] to reach the smell tissue.

What Dr. Jafek failed to note in his report is that Peet found it difficult to reach the smell tissue and cautioned that only a trained technician should engage in the procedure:

> The actual application of the zinc sulfate solution to the olfactory area has been found more difficult than was anticipated. . . .
>
> It is evident that to be effective the spray must be directly applied to the olfactory area.  We wish especially to emphasize this point.  <u>Ordinary spraying with the atomizer tip introduced below the middle turbinate will not suffice except in isolated instances</u>. . . .   [T]he spray solution must be actually applied to the olfactory area, and this can be accomplished only under direct observation with proper equipment and by one trained in this particular technic [sic].  It is not a procedure which can be applied by the parents or by a physician not familiar with intranasal work.

(Pl's. Ex. 41 at pp. 2185, 2185-86) (emphasis added).  Thus, Peet's study does not confirm Dr. Jafek's conclusion.

---

[2] The septum divides the left and right nasal cavities.

In an purported effort to confirm his conclusion that Zicam can reach the smell tissue, Dr. Jafek conducted a cadaver study in or around March 2005.  (Pl.'s Ex. 57.)  In this study, he sectioned the heads of two cadavers and removed the septum, which divides the left and right nasal cavities.  He then inserted a pane of glass on the sectioned heads to observe the passage of fluid through the nostrils.

Several problems exist with respect to the reliability of this research.  First, there is evidence in the record that such a study fails to reliably mimic the passage of Zicam or other substances from the opening of the nose to the smell tissue.  Second, as the Judge in *Sutherland* pointed out, Dr. Jafek criticized a different nasal study because it involved the use of a single seventy-nine year old cadaver.  *See Sutherland v. Matrixx Initiatives, Inc.*, 04-AR-129-M, at * 18 (N.D. Ala. Nov. 7, 2006)   According to Dr. Jafek,

> to spray something into the nose of a cadaver, I'm not sure how that is a significant enough observation that Dr. Schwab could depend upon that in reaching his conclusions. . . .   Because it contains incomplete data.  I don't think you can draw conclusions from one 79-year old cadaver study.

*Id*.  Yet, in the present case, Dr. Jafek's study involved one sixty-nine year old cadaver and one seventy-year old cadaver.  It is unclear why Dr. Jafek's study would prove to be any more reliable than the one he criticized.

Finally, Dr. Jafek's cadaver study is problematic because he performed the experiment after he had already made public statements regarding the dangers of Zicam and had been in contact with lawyers pursuing Zicam litigation.  Research conducted under such circumstances, does not have the indicia of objectivity and/or reliability.

2. <u>Is Zinc Gluconate Toxic to the Olfactory Epithelium Such That it Can Cause Permanent Smell Loss</u>?

Dr. Jafek concludes that Zicam causes smell loss; in other words, zinc gluconate, the substance found in Zicam, is toxic. Again Dr. Jafek reaches back to early polio studies; this time he relies on the work of E. W. Schultz, M.D. (Pl.'s Ex. AA.) The problem with this study is that the research involved application of zinc <u>sulfate</u> to the smell tissue. Zicam, on the other hand, contains zinc <u>gluconate</u>. Dr. Jafek fails to present satisfactory evidence that the two compounds are sufficiently similar so as to reliably reach the conclusion that the zinc gluconate will have the same impact on smell tissue as zinc sulfate. "'[E]ven small differences in chemical structure can sometimes make very large differences in the type of toxic response that is produced.'" *McClain*, 401 F.3d at 1246 (citation omitted).

Dr. Jafek also unconvincingly relies on his own research for support of his toxicity conclusion:

> A personal, peer reviewed and published, epidemiologic study shows that to a reasonable degree of medical probability zinc gluconate causes loss of smell.

(Pl.'s Ex C at p.9.) He then cites to a 2004 article he co-authored.

The Court is not persuaded by this case study of ten subjects who complained about smell loss. Only one of the subjects was actually examined: the other nine subjects submitted questionnaires via the internet. Indeed, one of Dr. Jafek's co-authors reluctantly admitted, during her deposition, that at least one of the test subjects failed to

submit information from which the authors could reasonably exclude other possible causes for the smell loss. (Defs' Ex. R, Linschoten (Lusch) Dep. at pp. 173-78.) Such a study merely amounts to anecdotal evidence, not evidence that has been vigorously tested using scientific methodology.

Dr. Jafek also relies on research conducted on animals to support his conclusion that zinc gluconate is toxic. These studies are also problematic because they involved zinc sulfate. In addition, the smell tissue in animals is smaller than the smell tissue in humans. As such, the dose-response in animals does not necessarily correlate to the dose-response in humans; that is, the dose necessary to cause smell loss in animals will not necessarily have the same impact on humans.

Without reliable evidence that Zicam can reach the smell tissue when used as directed or that Zicam can cause smell loss, Plaintiff lacks sufficient evidence to move forward with her case.

### 3. Plaintiff's Supplemental Brief.

In the face of five District Court decisions excluding Dr. Jafek's Zicam related opinions, Wyatt makes several arguments. First, she argues that the analysis employed by the other District Courts is flawed. Wyatt first contends that the first District Court opinion, *Hans v. Matrixx Initiatives*, 3:04-cv-540-R (W. D. Ky. Sept. 29, 2006), contains a "glaring error." In *Hans*, the Court noted that the Zicam package directions instruct the

user "to point the nozzle laterally, to deliver the gel directly into the lateral wall of the nose." *Id*. at 6-7. Because the Zicam instructions do not provide such direction to users, the analysis employed in *Hans* is faulty, argues Wyatt. This problem, according to Wyatt, is then carried over into the other District Court decisions.

Wyatt's argument in unconvincing, particularly with respect to the two District Court opinions upon which the present Court primarily relies: *Sutherland v. Matrixx Initiatives, Inc.*, 04-AR-129-M (N.D. Ala. Nov. 7, 2006) and *Benkwith v. Matrixx Initiatives, Inc.*, No. 2:04-cv-623-MEF (M.D. Ala. Dec. 27, 2006). While the Judge in *Sutherland* indicates that he held back waiting for another court to issue an opinion first, the Judge did <u>not</u> indicate that his analysis was based upon the analysis found in *Hans*. Indeed, *Sutherland*, is a thirty-three page opinion that throughly addresses not only the issue of whether Zicam can reach the smell tissue (the primary issue addressed in *Hans*), but *Sutherland* throughly addresses the evidence proffered on toxicity, as well as other issues raised by Dr. Jafek's expert report. Likewise, the decision in *Benkwith* contains a similarly detailed analysis of the proffered evidence. Not once is there any indication that the Judge in *Benkwith* based his analysis on the *Hans* decision.

Next, Wyatt argues that the other District Courts erred because they focused on whether Zicam can reach the smell tissue if used as directed. According to Wyatt, these courts ignored hornbook product liability law because they failed to consider whether misuse of the product was foreseeable. This argument also fails, because the misuse issue

only comes into play if there is sufficiently <u>reliable</u> scientific evidence that zinc gluconate is toxic.  Here, no such evidence was proffered.

    Therefore, by separate order, the motion to exclude Dr. Jafek's testimony will be granted.

    Done this 30th day of March, 2007.

_____<br>
U.W. Clemon<br>
United States District Judge